Case Numbers 233768 and 233799, Tarrico 2013 LLC v. Berlin Township Bd of Trustees, et al. Oral argument not to exceed 15 minutes per side. Ms. Frick for the appellant. Good morning, Your Honors. My name is Dawn Frick. I'm here on behalf of Berlin Township and the Berlin Township Board of Trustees. I'd ask to reserve three minutes for rebuttal. Your Honors, this case arises out of the Appellee Tarrico's desire to build and deploy a cellular tower in Berlin Township, and Berlin Township's position that Tarrico should comply with the Berlin Township zoning resolutions. As this Court listens to the arguments today, I ask you to please keep in mind that the TCA is clear that the Act was not to limit or affect local jurisdictions' decisions over regarding the placement, construction, and modification of personal wireless service facilities. The language that Congress put in the TCA makes it clear that Congress intended to preserve local jurisdictions' authority over certain things. That means we have to consider the brownfield immunity, or you suggest that we not consider that in this particular instance? Well, Your Honors, first, the brownfield immunity issue really was not addressed by the District Court below, but I would contend with you that the brownfield immunity doctrine is a State Court-created doctrine. It's not the TCA and the language of the TCA, and that's what we ask this Court to look at first. I would contend that, in fact, what should have happened is probably the brownfield immunity issue had been dealt with first, and then you go to the TCA. But in this particular case, the Court looked to whether or not the TCA was violated, and we would contend, in fact, that's not the case. What about their argument that it would be futile? In other words, their futility argument. How do you deal with that? I'm sorry, Your Honor, that what would be futile? They say going through the process would be futile. In other words, what you want to happen, it seems to me, is the State Court to make a decision on the brownfield immunity, hopefully for your sake, deny them brownfield immunity. Because if the State Court agrees with them, the case is over, right? They can build their tower. If the State Court denies the brownfield immunity, comes back to City Council or whoever, whatever the Berlin Township entity is, and that entity decides all the questions you just brought up under the TCA, correct? Yes. What they're saying is you're not going to let us build the tower, so that whole process is futile, and we should just skip all that and let us basically rule on our case. Skip final action, skip the deadlines, just get to the chase. First of all, I think it's speculative on their part, but I think the Berlin Township would acknowledge that even the Ohio revised code limits what they have the ability to do with respect to cell phone towers. But what they do have is the ability to take a look at it and protect the health, safety, and welfare of the citizens by looking at things such as height, setbacks, landscaping, security, and those are things that are particularly important in this case, because this particular tower they're looking to build, or frankly it's built now, on school property, very close to an elementary and middle school. And so what the township sought to do is they wanted them to follow that process and look to the township zoning resolutions, which took a look at things like how high the tower should be, the setbacks to be conscious of the fall zones, landscaping to make sure it's not an attractive nuisance to the young children that are going to be close to it. So I don't know that they can say it was an exercise in futility. Those were the things that the township sought to be able to take a look at. What is the culmination of decision making under the TCA? What does that mean in this case? Well, Your Honors, I would say that in this case, when you're looking at the language of the TCA, the culmination of a decision making is when there is an application brought to the township or a request brought to the township, the township then having the ability to consider those issues, that application, and therefore make a decision. The TCA doesn't anticipate the state-created doctrine of brownfield immunity, which again is why I think that should have been addressed first. But because that doesn't anticipate it... If brownfield immunity applies, then what's the sort of consummation? What's the final action in that situation? Well, I mean, if you look to what the trial court said, the consummation in that situation is what the district court said is the only thing that the township could have done was to file for an injunction. So in that case, if it applied, that's what the district court said. I'm not sure brownfield immunity applies in a way because arguably it exists to protect state functions and the operations of state agencies, and there's no public function here sought to be advanced because the only state agency on the horizon is the school board, since the tower would be on school board property. But the action sought to be advanced doesn't have anything to do with running a school or operation of school properties. So you really have to wonder if brownfield immunity even applies because there's no... I know you're not arguing in favor of brownfield immunity, but there's no final agency action here that would entitle the tower company to go to court for an injunction. So if brownfield immunity can't be decided in favor of Tower Co., do they have a pathway to prevail here in any event? What's on appeal here is the federal court injunction, right? That's correct. And in order for the federal court to grant that injunction, he had to engage in equitable tolling. So if the equitable tolling decision was incorrect, that would be another problem for Tower Co., wouldn't you say? Because Tower Co. had ample time to file the case in federal court but didn't do so and delayed, and then they asked for equitable tolling. And I'm trying to figure out why the district court accurately decided the request for equitable tolling here. I guess on the basis that maybe there was some public function involved here, which I'm not sure I see that there was. Well, Your Honor, and I would agree with you in fact that I think that the application of the equitable tolling wasn't proper in this case because if you take a look at what happened, the township filed its state court case. Tower Co., on its own volition, it chose to file an answer in the state court case and chose to file its federal claims in a counterclaim in the state court case. Then it sought to remove that to federal court improperly. Now at that point you have to remove based on the counterclaim.  And as a result of all that delay, they want equitable tolling when it was the lawyer's mistake that they didn't file a timely federal lawsuit. Because at that point, Your Honor, what happened is they could have gone back when the case was remanded and dealt with the federal claims in the state court because they did file it timely in the state court. But what Tower Co. did is what was ultimately the problem that they have. They voluntarily dismissed those counterclaims. So when they voluntarily dismissed those counterclaims on their own, it is as if the case never happened, as if those claims did not yet exist. So at that point, because they could have gone on and dealt with their claims in the state court, by voluntarily dismissing, they put themselves in a bind. Because then they sought a do-over to file it in federal court. But at that point, they're long beyond the 30 days. The other thing they could have done is they could have filed their federal lawsuit case in a timely fashion at the inception. And then they wouldn't have had to worry about equitable tolling. I would agree with you, Your Honor. But they chose to file them as a counterclaim in the state court. That was something that they did. I mean, that was a court of competent jurisdiction. But I don't believe the equitable tolling applies because of the fact that they dismissed the case. They dismissed those claims and then tried to refile it. Filed it beyond the 30 days. I guess you're saying that the final action by the township was seeking the injunction in state court. Is that right? If that's what this court determines, and that's what the district court determined, our position is that there was no final action. But if the court is going to say that the only action that could be taken is to file an injunction in the state court, which is what the district court said, even if that's the case and if this court accepts that, then 30 days from that time would have been when they would be required to file their claims. And frankly, they did. They filed it timely in their counterclaims. But then when they dismissed them, that's where the problem arose for them. And so that's why we contend that their claims aren't even properly brought. They're not timely brought. They're not timely brought because they're not right because there's no final action. Well, they're not timely brought because there's no final action. But even if this court says there's a final action, by virtue of their dismissal of their claims and then the refiling on August 31st, right, the equitable tolling doesn't apply. Well, the Telecommunication Act requires affected entities to pursue relief within 30 days. And I guess Township filed this federal state court case on June 21st, 2022. Talc co-filed this federal lawsuit advancing the telecommunication claims on August 31st, 2022, which was beyond the 30-day requirement. And that sequence of events led to the request from the district court to equitably toll the time that the parties entered into their joint stay in the state court. That looks like the sequence of events I'm looking at here. Is that what your records show? That's correct, Your Honor. But the equitable tolling provision that the district court relied upon is the tolling provision in the 2009 FCC ruling, which addresses the equitable tolling of the reasonable amount of time in which the Township would have had to respond to a request. It doesn't say that it's equitably tolled for them to bring a claim. But in fact, even if all of that were true, the problem that they have is that they dismiss those claims. They dismiss those claims, which has the effect that they never existed prior to then. And that's the problem. Now, what you're asking for here is that we reverse the district court's preliminary injunction. Is that the only thing this appeal is about? That's what this appeal is right now. That's what's right here before this court. All right. You'll have your rebuttal time. Thank you, Your Honor. Good morning, Your Honors. Good morning. My name is Jim Matthews. It's my privilege to be here today on behalf of Tower Co. And Judge Clay, if I may begin by addressing some of your questions, that seems like a logical place for me to start. The dismissal of the counterclaim that had been removed to federal court did not happen in a vacuum. I think you have to look a little further at the record that existed at the time of that dismissal. And the record reflects that after the suit was filed in state court, there was the timely answer and a counterclaim filed. And almost immediately, I believe it's around, I don't want to speculate on the date, but it's very promptly after that action took place, I believe the answer and counterclaim were filed on July 13th and that the state court case, there was an agreement to stay things, entered on the 15th. That's not the stay that we are particularly interested in stressing for you this morning or that we tried to stress in the briefs. We believe that the stay that's much more important is the stay that was entered into by the parties during the course of the first federal court action. The record is quite clear that what the parties agreed to was a very specific standstill agreement. It's in writing. It's part of the record. It was approved by the initial district court. Excuse me, Judge. How would that impact the 30-day? I mean, I understand that there is a stay, but as you mentioned, the stay agreement was after the lawsuit was filed. So there would really be no need to sort of stay the 30-day time period if the lawsuit is already there. So I don't understand how that would impact that 30 days. Sure, Judge. And I would suggest what you look at is the breadth of that tolling agreement. The parties wanted to entertain a period of time to negotiate the prospect of resolving this matter. That's very clearly expressed in the agreement. It's also clearly expressed that the parties wanted to just put a hold, if you will, I'm paraphrasing, but put a hold on all litigation, consideration of any litigation matters, until they had the opportunity to address whether or not an agreement might be in the offing to avoid all of this litigation strife for the courts as well. The only carve-out of that standout agreement, and I think this is important, is that it's expressed as the only exception to the standstill agreement is that the plaintiff may file a motion to remand back to state court. That is literally the only thing the parties agreed to kind of leave in play yet. You didn't put anything, the parties didn't put anything in the stay agreement providing for equitable tolling or trying to take account of that. And you could have put that in the agreement. Could have, Judge. I mean, the court didn't have to enforce it, but you could have put that in the agreement and you didn't. Certainly, Judge. I will acknowledge for you that it does not express those words. But I'd emphasize again it's my belief that the comprehensive nature of that standstill agreement designed for the parties to try to avoid litigation, avoid interjecting the court into this, and try to reach an agreement, the only exception is the key. It's very clear that the parties intended it to be very broad. Let me ask you this. Why are the bodies in court anyway if there was not any final agency action on the zoning request? It's like you didn't, Tower Company didn't want to wait and deal with the local zoning authorities in the township. Even though the county prosecutor had sent notice that there was a problem here and the township was taking the position that brownfield immunity didn't apply, and your client, instead of responding or dealing with the local township people, just blatantly proceeded with the construction without even responding. As I understand it, maybe the record is not. Again, Judge, I appreciate the way you have phrased that, and if I may, I'd respond this way. I'd say, first of all, it's very clear that we, on behalf of Tower Co., asserted that brownfield immunity was applicable to this project. I know that earlier, Your Honor, you expressed some concern about that. What interest of the school is actually being advanced by a project such as this? I mean, his question is, was there a final action? Yeah. I believe the final action is ultimately when they, the first final action, I think there was a continuing course of conduct by the township, but the first final action is when they ventured into court for an injunction to stop finishing. How is that a final action? I mean, the Supreme Court has been pretty clear what a final action is. It's a culmination of decision making, and it alters the legal regime. The filing of suit does neither of those things. Oh, it clearly, I would respectfully disagree that it clearly changed the legal landscape. If you look at the landscape to that, I'm sorry, Judge. Wait. Does brownfield immunity exist when the suit is filed? Yes. Okay. It's our position it was asserted and not timely challenged. That's our position. Okay. But that's a position, brownfield immunity is a state court creation that you get at the blessing of the state of Ohio, and you didn't want to litigate it in Ohio court. And so what happened, and you probably improperly removed the first time. We can debate that. It's irrelevant. But regardless, what a final action is under Bennett and under agency law principles is the culmination of the legal process. To me, the process in the agency doesn't start until there's a brownfield immunity decision. So I don't see how you get around that. I think the predicament that we all face, and I understand this predicament. I'm not suggesting to you that this is a bright line test. But I think it's just a matter where we have to step back and look at the interplay between these particular principles of law. We asserted brownfield immunity. The status of state law is such that the way for a party to properly challenge that assertion is to file an injunction action. At least to that point, I think we might all agree. And certainly the district court agreed with that analysis. We proceeded when there was no express position taken on our assertion of immunity that we were allowed to proceed under state principles. Now, I know the comment was made that there was a letter from a prosecutor. It wasn't. Here's how. Let me just stop you. The way I think about this, and you should correct why I'm wrong, is a final action is the culmination of the decision making by the agency. In this case, by the township. That process hasn't even started, and it alters the legal regime as the second part of it. That only occurs if brownfield immunity is denied. You go back to the township and seek permission. The township makes a decision, and it alters the legal regime. And so it seems to me they're just trying to be involved in the decision making by filing the suit. Because if they don't file the suit, they get no say. Because you've asserted brownfield immunity. You can do it as you did without doing anything. And the township doesn't even get a say. Their zoning is irrelevant until they file the suit. And that doesn't change the legal landscape. You're still entitled to brownfield immunity at that point. Well, I think the predicament we face here is the intervening facts. Wait, what else are they supposed to do? You're building a tower. They want to say, I just don't understand what a town's supposed to do. You're essentially saying any cell tower company can come into any town in Ohio, assert brownfield immunity when they build it on some kind of state property. Narrowly to that, yes, Judge. Yeah. And then the township can do nothing about it. And as soon as they file a suit, they've taken final action. Yeah. See, I believe, and if I may, maybe I'm not articulating this perfectly here, but let me try one more time. I think the key feature to the challenge on brownfield is to timely assert the injunction case. When we only received a letter from a prosecutor that conflated issues that had nothing to do with brownfield immunity, we proceeded under our assertion of immunity. We obtained a building permit. We cleared the site. We started setting up, racking as the companies call it, this tower. And this tower was built and ready to go but for the utilities, the screening, and the placement of the antennas. It's only after all of that occurs that an injunction action is dropped on us, which literally then is at the eve of interfering with deployment of this tower. Of course, you didn't tell the township you were going to proceed with construction of the tower. The prosecutor tells you not to do it and you're in violation and you don't respond. Instead, you run out and start building this thing and they find out way later that you've done all this construction. That doesn't seem right at all in terms of local zoning laws and land use requirements. I'm not trying to make light of your comments. I respect them. I can tell you, though, what the record reflects from the testimony at the hearing was that the one trustee in particular saw the tower being constructed. It's open. It's obvious. It's in broad daylight. It's occurring between a middle school and a high school building. I believe his testimony in the record was quite clear that he knew that the tower had gone up by April. He said, if I'm remembering correctly, that it was months later that he found out that this construction was underway when he happened to inadvertently drive by the site and sees all this construction going on. I think his testimony is actually more fully characterized as he knew by April that tower had already been constructed and he drew the assumption that it must have been permitted. So he didn't explore it. He wasn't on the zoning board, though. He's a member of the board of trustees. And if they had some concern about this, it should have been brought to the attention of a state court to challenge Brownfield well before construction was first placed. Why in the world does Brownfield even apply? Because based on the Brownfield case, there's supposed to be a state actor that's made a reasonable attempt to comply with the municipal zoning. Who is the state actor here? There's no state actor that's made a reasonable attempt. The only state-related entity is the school board, and the Brownfield immunity would be there to protect the functioning of the state agency that would come in and attempt to assert a position, but the school board wouldn't do that. The only state-related public interest activity of the school board is to build schools and educate children. So they wouldn't really have any interest in the cell tower as such. So that would not be the appropriate state actor for these purposes. And so why is Brownfield immunity even, you're using that as a basis when there's no, you don't even have a state, the tower company doesn't have a state agency that it was acting in conjunction with to advance a public purpose. It will not surprise you that it is our position that the school board, as a political subdivision, qualifies as the state agency here. We are acting as its agent by written lease in the preparation of this cell tower for operation. I can tell you two other key features that I think are important, and that is that a function of a school board in the education of children in the building and maintenance of schools is also finding available funding. This lease provides a substantial amount of funding for the school. It then has more funding and the ability to perform its functions. In addition to the funding that goes on for many years from this lease, having that extra capacity right there at the school district is an enhancement to the operation of the school functions themselves. Literally, that's the two reasons why the school district wanted this tower there, to provide the density for the operations of high-tech, if you will, school maintenance today, the presentation of things to children, and also the finances. Now, the second important feature is part of... Before you go to the second feature, the countervailing interest would be the neighbors and the citizens who lived around there who objected to the tower, and their only avenue would be to act through their... or to seek remedies through their local school board. That's true. They could have objected, they could object, but the school board... Well, they did agree. Well, I think the record of objections are really forms of letter that went to the Board of Township Trustees. And we know from the record, quite frankly, the rationale for the original objections to this tower were all inappropriate. Inappropriate in the sense they really weren't substantiated. You're circumventing what Judge Coy is saying, because what Judge Coy is pointing out is, had you let the normal process play out, both sides could have had their say. It would have been a totally different record. I cannot disagree with that. And I understand, Your Honor, that this case took a different path. That's why it does present a unique set of features for you in the interplay of brownfield immunity and the TCA. I fully understand that. Maybe we mischaracterized it in the brief as being complex. I think we used that term. This is nowhere near the complexity of cases that I know you see. I think it's more of just an intellectual exercise of walking through what is the objective of the TCA. It's to see that towers that fill a gap are timely, allowed to deploy. And that really ought to be the essence in this particular case. The tower was properly permitted at the county level with a building permit. We stacked it. We had it ready to deploy. And then the township, at the last minute, if you will, elected to interfere with that. I know my time is out. If I could just comment on one other thing that I think is crucial here, is after the dismissal, and I appreciate that, Judge, is after the dismissal, the arrangement between the parties continued, and there was a good faith effort on behalf of Tower Co. to work toward an agreement. But it came to a culmination on the 30th when it was flatly rejected, and that e-mail is in the record that then precipitated the filing of this suit that's before you. I appreciate the exchange this morning. And unless there are any questions, I know my time is up. Thank you very much. Thank you all. Any more follow-up? Thank you, Your Honors. Just to clarify a couple of facts that I think are important to keep in mind as they emphasize that the township didn't timely take action to file the injunction action. First of all, I think it's important to note that in getting their building permit from the county, there was a representation that the township assented to them building the tower. That representation was, in fact, not correct. The testimony was also that once the township trustee did learn that the tower was being built when he drove by it, that initially they went to the county who had issued the building permit to say effectively what's going on. And initially the county then put a stop work order on it because of the misrepresentation of the township assenting to it being built. Ultimately the county did lift that work order, stop work order, and within a number of days the injunction was filed, the injunction action. So I don't think it can be characterized as the township just not timely taking whatever action. In fact, the only action that everyone seems to agree the township was able to take, if in fact brownfield immunity applies. But in addition to those issues, I'd like to also point out to the court that I don't believe in finding that the preliminary injunction should be granted, that there was any evidence of any irreparable harm to Tower Co. in the event the preliminary injunction was not granted. First of all, importantly, as they've emphasized, they had already agreed to a stay. A stay that, in fact, in the state court still exists. So if they voluntarily agreed to a stay and voluntarily agreed to keep the status quo, how can they now argue that they would have been irreparably harmed? Additionally, with respect to whether or not there would be any loss of goodwill or financial finances, that could be addressed by monetary damages, but also there's absolutely no evidence of a potential loss for goodwill. In fact, the counsel for Tower Co., their general counsel, testified that they've continued to do business with Verizon and continued to do business with other characters or other carriers. I mean, there's absolutely no evidence of any loss of goodwill. And if, in fact, there was any problems with coverage, which, again, there is no evidence of, then that loss of goodwill would be the loss of goodwill to Verizon. I hate to interrupt, but you're kind of getting into areas that were not addressed by your opposing counsel instead of sticking to a rebuttal argument. I apologize, Your Honor. I guess I would just go back to address, then, the issues that you all did discuss. And actually, my time is over, but I would say, Your Honors, that we would maintain that the preliminary injunction was not properly granted and that the case should be sent back to the district court. Thank you. Thank you very much. Thank you for able arguments on both sides, and the case will be submitted.